UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ANTONIO JOHUNE BEASLEY   )
           ) No. 1:03-CR-106/1:08-CV-115
vs.           )
           ) *Judge Edgar*
UNITED STATES OF AMERICA  )

## MEMORANDUM

Antonio Johune Beasley ("Beasley") has filed a motion to vacate, set aside, or correct his sentence entered in his criminal case, No. 1:03-CR-106, pursuant to 28 U.S.C. § 2255 [Criminal Court File No. 98].[1]  Beasley's claims are vague, rambling, and lack clarity; thus, they are convoluted nearly to the point of being indecipherable.  Nevertheless, as best as the Court can determine, Beasley is alleging various instances of ineffective assistance of counsel.  In addition, Beasley has filed numerous verbose and rambling motions, some of which are virtually indecipherable and most of which, seemingly raise the same claims raised in his § 2255 motion.

For the following reasons, the § 2255 motion, as well as all of the other pending motions, will be **DENIED** and this action will be **DISMISSED** [Criminal Court File No. 98].

## I. Motions

Numerous motions are pending before the Court.  In his motion to waive fines, Beasley requests the Court to enter an order waiving all fines in his criminal case [Criminal Court File No. 167].  As reflected in the transcript of the judgment proceedings and in the Court's Judgment,

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

Beasley was assessed a special assessment of $300.00 and ordered to pay $575.00 in restitution [Criminal Court File Nos. 66, 78]. The Court waived any fine in this case, finding Beasley did not have the ability to pay a fine. This waiver is reflected in the Court's judgment which reflects there was no fine [Criminal Court File No. 66]. Accordingly, because Beasley's judgment reflects he was not fined, the motion to enter an order of waiver of fines is **DENIED** [Criminal Court File No. 167].

The remaining motions assert or reassert claims of error in Beasley's conviction and sentence or request rulings which are necessarily denied since his § 2255 motion is being denied as meritless. Accordingly, these motions will be **DENIED as MOOT** [Criminal Court File Nos. 123, 124, 131, 134, 139, 142,145, 146, 148, 149, 150, 155, 157, 159, 161, 171, 172, 173, & 178].

## II.    28 U.S.C. § 2255 - Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating

allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 116 S. Ct. 1701, 134 L. Ed. 2d 800 (1996).

### III.  Procedural Background

On April, 23, 2003, a grand jury in the Eastern District of Tennessee returned a four-count indictment charging Petitioner as the sole defendant in Counts One, Two and Four in connection with two Hobbs Act robberies in violation of 18 U.S.C. §§ 1951, and in Count Three with possessing a firearm in relation to the robbery charged in Count Two, in violation of 18 U.S.C. § 924(c). (Court File No. 1, Indictment). Beasley was arrested as a result of the indictments on May 19, 2004 (Court File No. 4).

Beasley filed a motion for a psychiatric examination and a notice of intent to rely on an insanity defense on September 23, 2004 (Court File Nos. 20, 22). The Magistrate Judge conducted

a hearing and sent Beasley to the Bureau of Prisons for evaluation (Court File No. 24). The Court held a competency hearing on May 5, 2005, at which time the Court heard telephonic testimony from Dr. Kevin M. McBride, a forensic psychologist, who confirmed the conclusions of the forensic report that Beasley had no mental disease or defect rendering him mentally incompetent at the time he committed the crime or that prevented him from participating in his federal criminal proceedings (Court File No. 77). Rather, Beasley was diagnosed as a substance abuser with an antisocial personality disorder (Court File No. 77, at 8).

Beasley pleaded guilty on August 11, 2005, with the benefit of a plea agreement, to Counts Two, Three, and Four, with the agreement that Count One would be dismissed (Court File No. 74, at 2).[2] He was sentenced on December 13, 2005, as a career offender under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1, because he had at least two prior felony convictions involving violent crimes. After receiving a three (3) level reduction for acceptance of responsibility, Beasley's guidelines were 151 to 188 months, but with the 60 months added for the firearm offense his guidelines were 211 to 248 (Court File No. 78, at 13). Beasley was sentenced to concurrent terms of 171 months for Counts Two and Four, followed by the statutorily mandated 60 months for the § 924 (c) conviction in Count Three. Upon release, he will be on supervised release for a term of five (5) years. That is three years for Counts Two and Four, and five years for Count Three all running concurrently.

During his sentencing hearing, Beasley raised several objections to the PSR. Beasley challenged, *inter alia*, the probation officer's statements that an upward departure may be warranted

---

[2] Although the PSR indicates there was no plea agreement, at the rearraignment the government announced that the plea was pursuant to a plea agreement between Beasley and the United States and one is in the record (Court File No. 74, at 2; Court File No. 80-1).

because his criminal history category substantially under-represented the seriousness of his criminal history or the likelihood that he would commit other crimes. In addition, he argued that two of the three convictions qualifying as a predicate under the Career Offender provision were consolidated at sentencing. In addition, Beasley argued his limited IQ and antisocial personality disorder warranted a nonguideline sentence [Criminal Court File No. 78, at 4].

Beasley, having already been through the appellate process, brings this § 2255 motion and, as the Court discerns, alleges counsel was ineffective for failing to investigate the "interstate commerce" element of the charged Hobbs Act violations; permitting him to testify at his competency hearing knowing that Dr. McBride concluded he was mentally retarded; failing to investigate his prior criminal convictions; permitting him to plead guilty to a 924(c) charge not specifically charged in the indictment; and coercing him to enter a guilty plea by threatening him with exposure to a life sentence if he proceeded to trial. In addition, Beasley contends appellate counsel was ineffective for failing to raise these ineffective assistance of counsel claims on direct appeal [Criminal Court File No. 98].

**IV. Facts**

The undisputed facts underlying Beasley's offenses are summarized in the Presentence Report ("PSR") as follows:

> 9.    On July 31, 2002, Antonio J. Beasley and an accomplice known as "Black" conspired to rob the Kentucky Fried Chicken located at 2501 South Broad Street in Chattanooga, Tennessee. According to Mr. Beasley, "Black" knew an employee at the restaurant who had given him information about the safe located inside it. The defendant was armed with a toy gun and "Black" was armed with a real handgun. Mr. Beasley was skeptical when he saw "Black" with the real gun, but decided to go through with the robbery anyway. "Black" entered the business and concentrated on taking money from the people inside while Mr. Beasley took the money from the business. Both Mr. Beasley and "Black" displayed their weapons to the victims. The money that was taken totaled $575 and no one was physically injured during the

robbery. The defendant and "Black" fled the scene in a red sports utility vehicle.

10.     On August 2, 2002, the Chattanooga police responded to a robbery call at the Burger King restaurant located at 4810 Rossville Boulevard, also in Chattanooga. The defendant entered the restaurant displaying a toy gun, and he had a bandana covering his face. Mr. Beasley demanded the money from the safe. The store manager opened the safe and relinquished an unknown amount of cash to the defendant. Before Mr. Beasley fled the scene, he demanded the store manager's cell phone so he could not call the police. The defendant fled the scene in a red sports utility vehicle. No one was physically injured during the robbery.

11.     Six minutes after the watch for the vehicle was issued, an officer with the Chattanooga Police Department stopped a red Chevy Blazer that matched the description of the getaway vehicle used in the Burger King robbery. Mr. Beasley was the sole occupant of the vehicle. Inside the truck, officers located $10 cash, two cell phones, one wig, one pair of sunglasses, one hat, two rolls of quarters, and a gray, long sleeved shirt. Mr. Beasley also had $408 cash in his front pocket.

12.     After his arrest and subsequent to his Miranda rights, Mr. Beasley gave a taped statement to investigators. Mr. Beasley confessed to the Burger King robbery and also to the Kentucky Fried Chicken robbery on July 31, 2002. The defendant's version of the events of each robbery matched the independent recollections of the witnesses in each case. The $408 cash was returned to the Burger King restaurant.

(PSR, ¶ 9-12, at 5).

## V.    Analysis

Beasley has raised several ineffective assistance of counsel claims. Ineffective assistance of counsel claims are evaluated under the two-prong *Strickland* test. *Strickland v. Washington*, 466 U.S. 668 690 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. A claimant pressing an ineffective assistance of counsel claim must prove: (1) his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance resulted in prejudice such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A claimant must introduce objective evidence in support of his § 2255 motion, as self-serving testimony is insufficient to establish the prejudice component of the *Strickland* test for ineffective assistance of counsel. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (objective evidence instead of self-serving testimony is required to show prejudice). The Court is not required to analyze both prongs of the *Strickland* test, as a claimant's failure to satisfy either prong is fatal to his claim. *Id.* at 697. Indeed, the *Strickland* Court instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

The Court's review of attorney performance is "highly deferential" and begins with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and internal citations omitted).

## A. Hobb's Act

Beasley makes numerous claims stemming from the premise that the United States could not establish the jurisdictional basis for a Hobbs Act violation. According to Beasley, counsel was ineffective for allowing him to plead guilty instead of raising the interstate commerce issue at trial, and for failing to investigate the "validity" of the Hobbs Act and its applicability to him.

Contrary to Beasley's assertion, his robberies did have a *de minimus* effect on interstate

commerce and therefore did satisfy the juridictional requirement for the Hobbs Act. The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . shall be fined . . . or imprisoned." 18 U.S.C. § 1951(b)(3). Federal jurisdiction over Hobbs Act violations is rooted in the Commerce Clause, which the Supreme Court has held is extremely broad. *Stirone v. United States*, 361 U.S. 212, 215 (1960) ("[The Hobbs] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence"). The law in the Sixth Circuit provides that a showing of a *de minimis* connection with interstate commerce satisfies the Hobbs Act where a robbery involves a business entity. *United States v. Davis*, 473 F.3d 680, 681-83 (6th Cir. 2007) (rejecting the argument that the Hobbs Act requires a substantial as opposed to *de minimis* effect on interstate commerce when a robbery is directed at a business entity). In addition, the law in this circuit is that "[t]here is no requirement that there be an actual effect on interstate commerce—only a realistic probability that [an offense] will have an effect on interstate commerce." *United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990) (emphasis omitted).

Beasley pleaded guilty to robbing a Kentucky Fried Chicken restaurant and a Burger King restaurant. A showing of *de minimis* effect on interstate commerce may be made by showing that the victim business purchased goods from outside the State of Tennessee. The government maintains, as the Grand Jury so found,[3] that the businesses robbed were engaged in commercial

---

[3]    In Count Two of the Indictment the Grand Jury charged that "[a]t all times material to this indictment, the Kentucky Fried Chicken restaurant . . . was engaged in selling items that were purchased in interstate commerce and in an industry which affects interstate

activities and purchased and sold items that had been transported in interstate commerce, such that the robbery of proceeds from those businesses satisfied the jurisdictional element. Petitioner has not presented any evidence to the contrary. *See United States v. Wiley*, 132 Fed.Appx. 635, 641 (6th Cir. 2005) ("Because the robberies in this case involved robberies of commercial businesses and not private citizens, the *de minimis* impact test would be applicable . . ."), *available at* 2005 WL 1285712, *cert. denied*, 546 U.S. 995 (2005).

Accordingly, based on the record before the Court, counsel had no legal basis to pursue dismissal of the indictment on jurisdictional grounds or proceed to a jury trial on the basis that the interstate commerce element could not be proven; thus, counsel's performance was not deficient and Beasley has not establish a claim of ineffective assistance of counsel.

### B.      Competency Hearing

Beasley contends counsel was ineffective for allowing him to testify during his own competency hearing even though counsel knew Dr. McBride found Beasley to be mentally retarded. Beasley's premise is flaw as Dr. McBride did not conclude Beasley was mentally retarded. Although the doctor testified his mental ability was below average, he did not conclude he was mentally retarded or "defective." (Court File No. 77, at 18-20). Dr. McBride concluded Beasley did not suffer from a severe mental disease or defect, but rather, suffers from substance abuse, along with an antisocial personality disorder (Court File No. 77).

---

commerce." Likewise, in Count 4 of the Indictment the Grand Jury charged that "[a]t all times material to this indictment, the Burger King restaurant . . . was engaged in selling items that were purchased in interstate commerce and in an industry which affects interstate commerce." Based on the record before the Court, a challenge regarding the interstate commerce element in this case lacks merit. It is well settled that the failure to raise a non-meritorious claim does not constitute ineffective assistance of counsel.

The evidence before the Court during the competency hearing clearly demonstrated Beasley was competent. Therefore, counsel's decision to have Petitioner testify to attempt to show otherwise, was a plausible strategy. Thus, counsel's performance in having Beasley testify at his competency hearing, was competent and objectively reasonable advice. Nevertheless, even if there was any error in counsel's advice to Beasley regarding him testifying at his competency hearing, Beasley is unable to demonstrate he suffered any prejudice as a result of his testimony. This is so, because as previously stated, the evidence in the record before Beasley testified clearly demonstrated he was competent. Accordingly, no relief is warranted on this claim.

### C. Prior Convictions

Though difficult to decipher, the Court discerns that Beasley is complaining that his attorney failed to obtain copies of all of his prior criminal convictions and copies of his "plea colloquy" on each charge. It appears Beasley is complaining that his attorney's failure to obtain these records resulted in counsel failing to argue that the four criminal charges to which he pleaded guilty in state court on September 15, 1999, were consolidated for sentencing; the attempted arson conviction did not qualify as a predicate offense for career offender status; and USSG § 2B3.1(b)(2)(E) was not applicable to him. The Court will discuss each claim separately.

#### 1. *Consolidated State Sentences*

Beasley claims that had counsel obtained copies of his prior convictions and plea colloquies, he could have demonstrated that the four crimes to which he was adjudged guilty on September 15, 1999, had been consolidated and thus only one of those crimes would have qualified as a predicate under the Career Offender provision. As explained below, even if Beasley is correct, he still meets the criteria for a Career Offender.

Beasley was convicted in two separate Tennessee State Court cases (Case No. 222998 and Case No. 224140) which the PSR reflected were eligible convictions for receiving Career Offender Status. Beasley maintains these two convictions were consolidated for sentencing on September 15, 1999. Petitioner erroneously contends that under §4A1.2(a)(2) of the U.S. Sentencing Guidelines his single sentencing makes these separate crimes a single entity for the purposes of receiving Career Offender Status under §4B1.1 of the Guidelines. USSG §4A1.2(a)(2) states "Prior sentences imposed in unrelated cases are to be counted separately." USSG § 4B1.1 states "A defendant is a career offender if . . . the defendant has at least two prior felony convictions of . . . a crime of violence . . ." Hence, the Career Offender Guideline is based on prior convictions, not prior sentences. Beasley's convictions stem from two distinct and separate cases that were presumably consolidated for sentencing for the convenience of the Court. Regardless of whether these two crimes were consolidated for sentencing they are two separate convictions under § 4B1.1.

Nevertheless, as the Court explained to Beasley during his sentencing hearing, a federal criminal defendant needs only *two* prior convictions for a "crime of violence" in order to qualify as a "career offender" under the Sentencing Guidelines. *See* USSG § 4B1.1(Court File No. 78, at 11) (emphasis added). Therefore, treating the four sentences as consolidated and, as Beasley argues, as one conviction, the conviction would qualify as a predicate offense, as does his attempted arson in 1990. Consequently, even under Beasley's argument he still qualifies as a career offender. To be perfectly clear, even if Beasley's argument is correct and those four convictions were consolidated for sentencing, he would be a "career offender," and his sentence would remain the same. Thus, no relief is warranted.

### 2. *Attempted Arson Conviction*

Next, Beasley argues his attempted arson conviction does not qualify as a predicate conviction for career offender purposes.[4] United States Sentencing Guidelines § 4B1.2 specifies that Arson meets the criteria for a crime of violence. USSG § 4B1.2(a)(2). Furthermore, the commentary specifies that a crime of violence includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *See* USSG § 4B1.2 Commentary, Application Note 1.

Accordingly, no relief is warranted on Beasley's claim that counsel was ineffective for failing to challenge the attempted arson conviction.

### 3. *Applicability of USSG § 2B3.1(b)(2)(E)*

Beasley contends his base offense level should not have been increased by three levels under USSG § 2B3.1(b)(2)(E). This section provides a three level increase in the base offense level for robbery "if a dangerous weapon was brandished or possessed." USSG §2B3.1(b)(2)(E). It is undisputed that Beasley brandished a toy gun—a "dangerous weapon" as defined in USSG §1B1.1 as defined in application note 1(d)—while robbing the restaurants. Thus, any objection by counsel would have been futile, as such enhancement was applicable and Beasley has submitted no credible basis for an objection to the enhancement. Thus, no relief is warranted.

In sum, Petitioner has not demonstrated that counsel's failure to obtain copies of his prior convictions or transcripts of his plea colloquies; argue the attempted arson does not qualify as a predicate conviction for career offender purposes; or challenge the three level increase for

---

[4]     According to the PSR, court records reflected that "the defendant poured gasoline around the doorway of an apartment and attempted to ignite it. There were several people inside the apartment." (PSR, ¶ 48).

brandishing the toy gun resulted in a miscalculation of his criminal history category or his sentence. Accordingly, this claim is denied on the merits as Beasley is unable to establish that his counsel was deficient or that he suffered prejudice as a result of counsel's actions.

**D.      Plea to Unindicted Offense**

Petitioner seems to be arguing counsel was ineffective for permitting him to plead guilty to a section of 18 U.S.C. § 924(c) that was not specifically charged in the indictment.  Count Three of the indictment charged that Beasley, and another, aided and abetted by each other, possessed a firearm in furtherance of a crime of violence, that is robbery as charged in Count Two of the indictment, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2(a) and (b) which carries a seven (7) year sentence.  Due to a typographical error, the indictment included the incorrect subsection of the statute, as the subsection identified in the indictment applies to defendants when a firearm is brandished.  The correct citation for the crime charged in the indictment, i.e., possessing a firearm, is § 924(c)(1)(A)(i) which carries a five (5) year sentence.  This is the crime to which Beasley pled guilty.  Beasley is apparently arguing this conviction should be dismissed because counsel should have required the government to re-indict him citing subsection (i) rather than subsection (ii).

This argument is unavailing as the Federal Rules of Criminal Procedure specifically provide that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Fed.R.Crim.P. 7(c)(2).  Here, Beasley does not assert he was misled or prejudiced by the inclusion of the citation applicable to brandishing of a firearm.  Indeed, he cannot as his plea under oath and in writing confirms he knowingly and voluntary entered the plea to aiding and abetting his companion's possession of a firearm.  Therefore, counsel's advice was not deficient.

13

Even assuming counsel's advice was deficient, which the Court does not find, Beasley has not demonstrate he suffered any prejudice. Instead, the record reflects Beasley benefitted from counsel's advice as the proof in the record reflects that both, Beasley and his co-defendant, brandished weapons during the robbery, thus it appears he was actually guilty of the offense corresponding to the citation in the indictment which carries a seven-year sentence.[5] During the plea hearings the Clerk read the proper charge and the incorrect code section, but counsel informed the Court of the correct code section at that time (Court File No. 74, at 18-19). In addition, Beasley signed the plea agreement which included the correction and Beasley pled guilty to the possession charge under the correct statutory citation(Court File Nos. 74, 75. & 76, at 45-57). Thus, absent any proof of prejudice, Beasley is unable to demonstrate counsel was ineffective and relief is not warranted.

**E.      Knowing, Voluntary, and Intelligent Plea**

Beasley contends his plea was not knowing, voluntary, and intelligent because he did not know he would be classified as a career offender and because counsel "threatened" that he would likely receive life imprisonment if convicted. Beasley has not provided the factual details of his conversations with counsel regarding the effect his prior convictions would have on his sentence or what circumstances would qualify him for a life sentence. Rather, Beasley has made general and factually unsupported claims.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

---

[5]      The proof in the record reflects Beasley used a toy gun and his co-defendant used a real weapon.

defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The Court of Appeals for the Sixth Circuit has instructed that a defendant's sentence will not be vacated on the ground that the guilty plea was coerced where the defendant was "carefully interrogated by the trial judge with respect to the offense committed," where the defendant was represented by "competent counsel," and where the defendant "discussed the offenses freely and voluntarily and freely admitted guilt, while fully aware of [his] rights." *United States v. Parker*, 292 F.2d 2, 3 (6th Cir. 1961); *see also Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) (A defendant's "decision to lie to the district court cannot amount to prejudice.").

Fed. R. Crim. P. 11 requires the Court to ask the defendant certain questions which creates a record that can be relied upon to insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). In determining whether a plea is coerced, a court considers the defendant's answers to the questions posed at his Rule 11 hearing, which carry a strong presumption of veracity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The provisions in Rule 11 specifically seek to ensure that entry of a plea is an intelligent and voluntary act. Great care is taken when accepting pleas under Rule 11 to place plea agreements on the record; ascertain the voluntariness and accuracy of the plea; provide detail advice to the defendant concerning his rights and the consequences of his plea; and to make a determination that the defendant understands these matters.

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.), *cert.*

*denied*, 426 U.S. 953 (1976)).  The United States Supreme Court has explained that when the voluntariness of a guilty plea is being evaluated, courts should consider the following:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

The Court scrupulously followed the Rule 11 procedure and Beasley is bound by the sworn statements he made in response to the Court's inquiry under Rule 11.  Beasley's factually unsupported allegation that counsel threatened him into entering a plea that was involuntary, unknowing, and unintelligent is refuted by the record.  His formal declarations made in person and in open court, carry a strong presumption of truth, and stand in stark contrast to the claims he now makes.  Beasley acknowledged under oath that his pleas were voluntary and he denied that anyone had threatened him or forced him to plead guilty (Court File No. 74, at 6).  The Court made the following finding: "The Court finds that this defendant is competent and capable of entering an informed plea.  The Court finds that his plea is knowledgeable and voluntary and supported by an independent basis in fact containing the essential elements of the offenses charged in Counts 2, 3, and 4"  (Criminal Court File No. 76).

Contrary to Beasley's claim, the plea colloquy[6] reveals that Beasley acknowledged he had prior convictions and he had discussed them and the sentencing guidelines with counsel. Beasley also acknowledged that he understood no one knew what his sentence was going to be and that it

---

[6]     The rearraignment proceedings occurred on three different dates to clarify questions pertaining to the 924(c) charge (Criminal Court File Nos. 74-76).

would not be known until he actually appeared in court for his sentencing hearing. Beasley assured the Court that he and counsel had discussed the sentencing guidelines; no one had made any promises to him as to what his sentence was going to be; and he understood no one would know what his sentence was going to be until his actual sentencing hearing (Criminal Court File No. 76, at 50-52). In addition, Beasley assured the Court his decision to plead guilty was voluntary and no one had forced or compelled him to plead guilty (Criminal Court File No. 74, at 6). Consequently, his claim that counsel threatened him with a life sentence is not supported by the record.

Moreover, Beasley was advised, in open Court, that he was facing a maximum term of imprisonment of 20 years on each of the robberies (Counts 2 and 4) and that the § 924(c) charge carried a mandatory-minimum sentence of five years up to a maximum of life that must run consecutively to the term in Count 2 (Criminal Court File No. 76, at 50-53). Thus, Beasley was advised of the possible sentences which he faced.

In light of Beasley's sworn statements to the contrary during the criminal proceedings and the record before this Court, the Court concludes his claim that counsel threatened him into entering an involuntary, unknowing, and unintelligent guilty plea is unsupported by facts, incredible, and unsupported by the record. Beasley has not presented any credible evidence to support his contention. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Beasley is not entitled to an evidentiary hearing on this issue. If the Court were to allow an evidentiary hearing on this claim, it would undermine and eliminate the chief virtues of the plea

bargain process -- speed, economy, and finality.  *Blackledge*, 431 U.S. at 71-72.  To permit collateral attacks on guilty pleas to be based on mere conclusory claims would make every guilty plea subject to attack under § 2255 and render the oral responses given by a defendant pursuant to Rule 11 meaningless.  *Blackledge*, 431 U.S. at 74.  The Court's conclusion that Beasley's plea was not coerced but was voluntary, knowing, and intelligent, demonstrates counsel was not ineffective and Beasley did not suffer any prejudice.

Beasley's sworn statements before this Court renders his argument unpersuasive.  Further, the Court observes that the plea agreement negotiated on Beasley's behalf benefitted him substantially.  First, the United States agreed to dismiss Count One of the indictment.  In addition, Beasley received a three level reduction for acceptance of responsibility. Although the government believed Beasley's criminal history under-represented his criminal past, they only asked that he be sentenced within the guidelines.  As the Court observed during sentencing, the seriousness of Beasley's criminal conduct was not reflected in his guidelines.  Regardless of whether some of the convictions were consolidate for sentencing purposes, the fact of the matter is Beasley's numerous convictions date back to 1988 and his criminal activity continued until he came before the Court on the instant charges.

In summary, all of the requirements of Rule 11 were followed.  Beasley entered an informed and voluntary plea in which he acknowledged under oath that he understood the charges against him to which he was pleading guilty; the possible sentences he was facing; he had discussed his prior convictions and the possible sentencing guidelines ranges; he understood his rights and the consequences of his plea; no one had made any promises as what his sentence was going to be; and that the Court would ultimately decide the sentence (Court File Nos. 74, 75, & 76).  The Court

observed and communicated with Beasley during the rearraignment proceedings. There was nothing during those proceedings that affected the knowing and voluntary entry of his guilty plea. Moreover, Beasley has not submitted any credible evidence requiring the Court to vacate those pleas.

In conclusion, Beasley, making nothing more than self-serving allegations that he was threatened into entering an involuntary, unknowing, and unintelligent plea, has not satisfied his heavy burden of rebutting the presumption of the declarations he made in open court. Beasley has failed to demonstrate his pleas were coerced, involuntary, unknowing, or unintelligent; thus, he has failed to demonstrate counsel was deficient. Accordingly, Beasley's claim that his defense attorney was ineffective because he threatened him or failed to explain his prior criminal convictions would be used to enhance his punishment must fail.

### F.       Ineffective Assistance of Appellate Counsel

Petitioner alleges appellate counsel performed deficiently on direct appeal because he failed to raise claims of trial counsel's ineffectiveness. Petitioner is unable to succeed on this claim.

The United States Supreme Court has instructed that a § 2255 motion is preferable to direct appeal for deciding an ineffective assistance of counsel claim because the record on direct appeal is devoted to guilt or innocence issues, and the resulting record may not disclose the facts necessary to decide either prong of the *Strickland* analysis. *Massaro v. United States*, 538 U.S. 500, 502-03 (2003). The *Massaro* Court held "that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255. *Id.* at 509.

Therefore, even if appellate counsel was deficient for failing to raise the ineffective-

assistance-of-counsel claims on direct appeal, Beasley has suffered no prejudice as he has raised the claims in this collateral proceeding. Accordingly, no relief is warranted on Beasley's ineffective assistance of appellate counsel claim.

## VI. CONCLUSION

None of Beasley's proffered bases demonstrate he received ineffective assistance of counsel during his criminal proceedings or on appeal. Accordingly, Beasley's claims do not entitled him to § 2255 relief and his § 2255 motion will be **DENIED** (Criminal Court File No. 198).

A separate order will enter.

_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE